# Lowry *against* Lumbermen's Bank.

2 WS 210
27 SC ²187

The pendency of a foreign attachment in another state, upon which judgment has been rendered and an injunction granted by the Court of Chancery upon the garnishee, forbidding him to pay to the defendant in the attachment, is not the subject of a plea in bar in this state, in an action by the original creditor against the debtor: the defendant can only avail himself of it by plea in abatement. Under such circumstances, nothing short of an actual payment of the money by the garnishee, or levy of his goods upon an execution, can be pleaded in bar.

If one of several joint guarantors pays the debt for which all were bound, he has thereby a separate right of action against the principal for whom he paid the money, which cannot be defeated by evidence of payment to another of the guarantors.

**ERROR** to the Special Court of Common Pleas of *Warren* county.

Lumbermen's Bank against Nathaniel A. Lowry.

The plaintiff's claim was founded upon the following note :—

" Three months after date we jointly and severally promise to pay to the order of the Lumbermen's Bank, at Warren, twenty-

six thousand dollars in the office notes of said bank, or other sol-
vent or current bank-notes.    Dated 6th Sept. 1837.

N. A. Lowry,

Guy C. Irvine."

Most of the points raised on the trial of this cause, were the
same as those in the case of *Irvine* v. *Lumbermen's Bank*, (*ante*,
page 190).

Upon the trial of the cause, the defendant asked to be permitted
to put in the following special plea, which the court rejected, and
sealed a bill of exception.

*After the formal part of commencement, &c.* in due form—sets
out that one Sedgwick Benham, of the county of Chautauque, in
the state of New York, on the 22d day of February 1838, accord-
ing to the form of the Statute in such case made and provided in
the state of New York, sued out an attachment against the Lum-
bermen's Bank, at Warren, being a foreign corporation, for a large
sum of money, to wit, $1475, then and there owing from the said
bank to the said Benham; and by virtue of the said attachment
and the Statutes of the said state of New York, in such case made
and provided, attached the alleged debt or demand of the said
bank against the said defendant, mentioned in the said declara-
tion, and held and still holds the same for the payment and satis-
faction of the amount due from the said bank to the said Benham;
he, the said defendant, being a resident and citizen of the said
state of New York.    That the proper attorney of the said bank
appeared to the said attachment, and an issue was duly joined in
fact.    The said attachment being duly sued out of the Supreme
Court of the state of New York, being a court of general jurisdic-
tion and of record—that such proceedings were had as that a
judgment was duly entered and docketed against the said bank,
and in favour of said Benham, for the sum of $1742.83, &c.: that
said attachment and judgment thereon has not been discontinued,
or in any way discharged, &c.; that by virtue thereof, and the
laws of the said state of New York, the defendant was restrained
and prohibited from paying, or in any manner accounting with
said bank for said debt mentioned in plaintiff's declaration, &c.;
that an execution was issued on said judgment and returned, no
property to be found, &c.; that the said judgment was duly
assigned to one Richard F. Fenton, who, according to the form
of the Statutes in said state of New York, in such case made and
provided, exhibited his bill, founded upon said judgment, in the
Court of Chancery of the said state of New York, being a court
of record, and having full power and competent jurisdiction
thereof, against the said Lumbermen's Bank, at Warren, and
against the defendant and others, as being debtors to said bank,
whereupon such proceedings were had by the said Fenton, as
that in pursuance of the statutes, &c., an injunction was duly

[Lowry v. Lumbermen's Bank.]

issued by the said Court of Chancery of said state of New York, and under the seal of said court, against the said bank, and against the said defendant, Nathaniel A. Lowry and others, enjoining and strictly commanding the said bank to desist from collecting their, or any of their claims against the said Nathaniel A. Lowry; and enjoining the said Lowry, under penalty of $10,000, to entirely desist and refrain from making any payments to said bank till the farther order of said Court of Chancery, averring that said injunction was duly served upon said Lowry, and had never been in any way vacated, modified, or impaired.

The plea farther proceeds to set out attachments similar in character and effect with all proper averments as to the service upon Lowry, and effect under the Statutes of New York in favour of Nathaniel P. Copp for $1755, in favour of Jacob Phillips for $1520, and Henry Van Buren for $1200. In all respects similar to the attachment of Sedgwick Benham, excepting as to the Chancery proceedings.

The defendant then gave in evidence the following paper:—

" The Lumbermen's Bank, at Warren, Pa., proffers to William H. Seward to give drafts on Philadelphia, payable four months from date, with 60 days' interest, on receipt of the usual notice, for all their office notes received by him in the regular course of business. This arrangement may be discontinued at the request of either party, on notice. Warren, September 21, 1837.

                              ROBERT FALCONER, Pres't."

" We, the undersigned, guarantee the payment of all drafts which may be given in pursuance of the above arrangement. Warren, Sept. 21, 1837.

                              JOSIAH HALL,
                              GUY C. IRVINE,
                              N. A. LOWRY."

The defendant then gave in evidence the following drafts, drawn by the president of the Lumbermen's Bank, in favour of Seward, on the U. S. Bank:—

One dated 5th Oct. 1837, payable 5th Feb. 1838, with
    expenses,  -  -  -  -  -  -  -  $1509.42
One drawn 29th Sept. 1837, payable 29th Jan. 1838,    1090.80
One drawn 20th Oct. 1837, payable 20th Feb. 1838, with
    expenses,  -  -  -  -  -  -  -  1820.63
One drawn 2d Nov. 1837, payable 2d March 1838,
    for  -  -  -  -  434.30
Paid by bank,  -  -  -  142.67
             Balance,  -  -  -  -  -  293.66

And gave in evidence, by the testimony of Benjamin J. Seward, as follows, to wit:—" The above drafts were protested, and paid

[Lowry v. Lumbermen's Bank.]

by N. A. Lowry, on a guarantee made by him, Josiah Hall, and Guy C. Irvine. These drafts were for the paper of the bank, taken at the land office.

The plaintiff then proposed to prove that the drafts referred to as Seward's drafts, and such as were provided for in the agreement, had been paid by the bank to Hall, Irvine, and Lowry, or either of them. Defendant objected to any evidence showing payment to Irvine or Hall; objection overruled, and exception by defendant.

The witness proceeded, "The drafts together amount to $4,848.09. I got from Hall a draft for $1200, which I paid on that account, and paid something more, say $142.67. In a settlement with Irvine, the last of January 1838, the bank gave him credit for two-thirds of these drafts, amounting to $3232, allowing him 3 per cent for his paying the money then, being $96.96; this left a balance due, which has never been paid by the bank, to my knowledge—to wit, one-third less $1200 and $142.67. It was agreed between these men, as I understood it, that they were to take care of these drafts." On his cross-examination, witness said: "After the drafts were due and protested, Mr Seward called on the bank for the balance that remained after the payments I have stated. Mr Irvine represented himself that he was bound to pay them, and claimed a credit for it. I think he said the drafts *were not* paid, but he would pay them."

On the subject of this evidence, the defendant requested the court to charge the jury upon the following point:—

If the plaintiff gave Mr Irvine credit upon the book, as testified by Mr Falconer, to the amount of $3200, for the purpose of paying the drafts in favour of Seward, and they were not paid by him (Irvine), it cannot prejudice the right of the defendant to his set-off in this suit, for the amount paid by him to Seward upon presentation and demand of the draft as testified by Seward.

The court answered this point in the negative.

*Galbreath* and *Marvin*, for plaintiff in error, upon the exception to the charge of the court to the jury, cited 10 *Serg. & Rawle* 211; 3 *Bos. & Pull.* 235; 7 *Serg. & Rawle* 238; 2 *Term Rep.* 282; 8 *Cow.* 168; 2 *Wend.* 481; *Chit. on Con.* 470; 18 *Wend.* 490.

*M'Candless* and *Pearson*, *contra*, argued that the liability on the guaranty was a joint one, and a repayment by the bank to either of the guarantors was a good discharge.

The opinion of the Court was delivered by

ROGERS, J.—In the case of *Irvine* v. *The Lumbermen's Bank*, decided at this term, there was no judgment and execution; but here a judgment was rendered, an execution issued, and a return of *nulla bona*. The defendant also gave in evidence a bill in chancery, filed by Benham, in whose favour the judgment was

[Lowry v. Lumbermen's Bank.]

rendered against Lowry and others, and an injunction enjoining Lowry from paying any money he may be indebted to the bank. But, notwithstanding this difference in the circumstances, we are of opinion they come within the same principle. To entitle a garnishee to a *plea in bar*, it must appear that he has been compelled to pay the money attached in his hands, or what is the same thing, that an execution has been executed by seizure and levy on *his* property. We acknowledge the principle of comity between nations by putting citizens of other states on the same footing with citizens of this state. The defendant has neither paid the money, nor is it certain that he will be compelled to pay any thing, nor has his property been taken in execution. It would, therefore, be unjust to permit him to plead the proceedings in New York in bar, although it would be competent for him to protect himself by a plea in abatement.

Next, as to the Seward drafts. The bank entered into the following arrangement with William H. Seward:

" The Lumbermen's Bank at Warren, Pa., proffers to William H. Seward to give drafts on Philadelphia, payable four months from date, with sixty days' interest, on receipt of the usual notice, for all their office notes received by him in the regular course of business. This arrangement may be discontinued at the request of either party on notice.

" ROBERT FALCONER, President.

" *Warren, September 21st*, 1837."

William H. Seward, who was the agent for the Holland Land Company, in the county of Chautauque, and who the bank was desirous should receive their notes in payment for lands, thereby creating a local currency in their notes, accepted the proposition, upon the following guaranty:

" We, the undersigned, guarantee the payment of all drafts which may be given in pursuance of the above arrangement.

" JOSIAH HALL,
GUY C. IRVINE,
N. A. LOWRY."

Afterwards several drafts were drawn, amounting in the whole to upwards of $4000. These drafts were regularly protested for non-payment, and $3200 was paid by N. A. Lowry. This the defendant insists upon as a set-off to the plaintiff's demand. For the purpose of explaining or rebutting this evidence of payment, the plaintiff proposed to prove that the drafts referred to as Seward's drafts have been paid by the bank to Hall, Irvine, and Lowry, *or either of them.* The defendant objected to any evidence showing payments to Irvine and Hall; but the objection was overruled.

The plaintiff then proved that on a settlement between the bank and Irvine, Irvine represented that *he* was bound to pay the

drafts, and claimed a credit on it, which was allowed, either in whole or in part.

The defendant then requested the court to instruct the jury that if the plaintiff gave Mr Irvine credit upon the books, as before testified by Mr Falconer, to the amount of $3200, for the purpose of paying the drafts in favour of Seward, and they were not paid by him, (Irvine,) it cannot prejudice the right of the defendant to his set-off in this suit for the amount paid by him to Seward upon presentation and demand of the draft as testified by Seward. The same point arises on the bill of exceptions, and the refusal of the court to charge as they were requested. The question is, whether a payment by one of two or more joint guarantors or sureties enures to the benefit of the co-guarantors or sureties. In *Gould* v. *Gould*, (8 *Cow.* 168), it is ruled that joint sureties paying money for their principal should yet sue severally to recover the money paid. So if several persons become surety for another, and one surety pays the whole, he may recover against the others their aliquot shares. 2 *Bos. & Pull.* 268; 8 *Term. Rep.* 319. But where several sureties pay the debt, they cannot jointly sue the other sureties for reimbursement. 3 *Bos. & Pull.* 235; 2 *Term. Rep.* 282.

If there are several defendants in an action *ex contractu*, and the plaintiff recovers judgment against them, and one pays the whole demand, the law gives him an action for money paid against the others for contribution. The rule seems to be otherwise in the case of a judgment against several in an action of *tort*. 8 *Term Rep.* 186; 1 *Camp.* 343, 345. It would seem, that where money which two or more sureties pay for the principal, is raised on their joint credit, or paid from a joint fund, the proper remedy for a reimbursement is a joint action against the principal. 5 *East* 225; 3 *N. Ham. Rep.* 366; 3 *Greenl.* 107. The right to sue jointly does not arise from a joint liability, but from a joint payment, where the money is raised on a joint credit or paid out of a joint fund. But where the payment is several, each must bring suit to recover the amount he has paid, and when one has paid the whole debt, he alone can maintain suit, because he claims as the creditor of his principal, and of his co-sureties also. It would be obviously unjust to allow the principal to meet a claim arising from the payment of one, by proof of payment of it to another, who, although bound, had paid nothing. From these principles it results that the court erred in admitting proof of the payment to Irvine, and in so much of their charge as relates to this point. There is nothing in the case to bring it within the benefit of the exceptions. There is no allegation that the money paid by the defendant was raised on the joint credit of Irvine and Lowry, or that it was paid out of a joint fund. If the money was paid by Lowry, as seems to be assumed by the court, although from some other testimony there may be doubt about it, he was entitled to

[Lowry v. Lumbermen's Bank.]

a set-off to the amount paid, notwithstanding any subsequent settlement which may have taken place between Irvine and the plaintiff. If the bank paid the money to Irvine, it was a mispayment, which cannot prejudice the rights of the defendant. Many of the other errors have been ruled in *Irvine* v. *The Lumbermen's Bank* (*ante* 190), and as no general principle is involved, I shall content myself with observing that they have not been sustained.

Judgment reversed, and a *venire de novo* awarded.